[Cite as *MILA Invests., Ltd. v. Hutchins*, 2019-Ohio-4298.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| MILA INVESTMENTS, LTD., et al. | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28213 |
| | : | |
| v. | : | Trial Court Case Nos. 2005-CV-723 & |
| | : | 2007-CV-169 |
| PAUL M. HUTCHINS, et al. | : | |
| | : | (Civil Appeal from |
| Defendant-Appellee | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of October, 2019.

. . . . . . . . . . .

JERRY A. MEADOWS, Atty. Reg. No. 0021262, 7501 Paragon Road, Lower Level, Dayton, Ohio 45459
        Attorney for Plaintiff-Appellant, David H. Kennett

BRIAN R. MCHENRY, Atty. Reg. No. 0065876, 130 West Second Street, Suite 1850, Dayton, Ohio 45402
        Attorney for Defendant-Appellee, The Cincinnati Insurance Company

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} David H. Kennett appeals from a judgment of the Montgomery County Court of Common Pleas, which overruled his motion to revive a dormant judgment and granted attorney's fees to Paul Hutchins. For the following reasons, the trial court's judgment will be affirmed.

## I. Procedural History

{¶ 2} The Breitenstrater Family Trust held commercial properties, which were managed by Hutchins Commercial Real Estate and Paul Hutchins. Beginning in 2005, the trustee of the Breitenstrater Family Trust and/or Kennett (a beneficiary of the trust) brought actions against Hutchins and his company related to actions taken by Hutchins in relation to the trust properties. *MILA Investments, Ltd., Trustee of the Breitenstrater Family Trust v. Hutchins Commercial Real Estate*, Montgomery C.P. No. 2005 CV 723; *MILA Investments, Ltd., Trustee of Breitenstrater Trust v. Hutchins Commercial Real Estate, Inc.*, Montgomery C.P. No. 2005 CV 9799; and *Kennett v. Hutchins Commercial Real Estate, Ltd.*, Montgomery C.P. No. 2007 CV 169. The trial court subsequently consolidated these three cases, and they ultimately were voluntarily dismissed without prejudice, pursuant to Civ.R. 41, in August 2007.

{¶ 3} In October 2007, MILA Investments, as trustee of the trust, and others again brought suit against Hutchins Commercial Real Estate, LLC, and Hutchins. *MILA Investments, Ltd., Trustee of the Breitenstrater Family Trust v. Hutchins Commercial Real Estate, LLC*, Montgomery C.P. No. 07 CV 8932. In January 2008, Hutchins Commercial Real Estate and Hutchins brought suit against Leona Sowder as trustee of the Breitenstrater Family Trust. *Hutchins Commercial Real Estate LLC v. Sowder, Trustee*

*of the Breitenstrater Family Trust*, Montgomery C.P. No. 2008 CV 1140. Sowder filed a counterclaim in the 2008 action. The two actions were consolidated in August 2008.

{¶ 4} In December 2008, MILA Investments (trustee), Robert Lachey (representative of MILA Investments and individually), Warren Miller (representative of MILA Investments and individually), Kennett (beneficiary of trust and individually), Hutchins Commercial Real Estate, LLC, Hutchins (individually), and Cincinnati Insurance Company ("CIC," Hutchins's liability carrier) entered into a mutual general release agreement. (Def.'s Ex. L.) Under the agreement, the Hutchins parties and/or CIC agreed to pay the Breitenstrater parties a sum of $35,000 upon execution. The Breitenstrater parties agreed to a general release and to dismiss, with prejudice, "all claims currently brought, or which could have been brought or that may arise in the future as a result of the facts and allegations described in the Case." (Def.'s Ex. L at ¶ 11.)

{¶ 5} In January 2009, the plaintiffs in Case No. 2007 CV 8932 voluntarily dismissed their complaint with prejudice; however, Case No. 2008 CV 1140 remained pending. Kennett moved to intervene in Case No. 2008 CV 1140, but his request was denied. In 2015, after notice to the parties, the trial court dismissed with prejudice Sowder's counterclaim in the 2008 action for failure to prosecute.[1]

{¶ 6} In February 2016, Kennett, as a beneficiary of the trust, brought suit against Hutchins and his company, raising claims that Sowder previously had raised in the 2008 action. *Kennett v. Hutchins*, Montgomery C.P. No. 2016 CV 1028. On September 23,

---

[1] The record in the cases before us suggests that the trial court and the parties believed that the plaintiffs' claims in Case No. 2008 CV 1140 also had been dismissed and that Sowder's counterclaim was the only claim that remained pending. However, the record here contains no exhibits demonstrating that the plaintiffs (the Hutchins parties) dismissed their complaint in the 2008 action.

2016, the trial court granted summary judgment to the Hutchins defendants on the ground that Kennett's claims were barred by the December 2008 mutual general release agreement. The court further noted that Kennett's claims were not sufficiently pled and would be time-barred by the four-year statute of limitations. (Def.'s Ex. P.)

{¶ 7} On May 16, 2018, Kennett moved for an order to revive a judgment entitled "Agreed Entry," allegedly filed in Case Nos. 2005 CV 723 and 2007 CV 169. The agreed entry was captioned *MILA Investments v. Paul Hutchins*, appeared to be signed by the attorneys for plaintiffs and defendants and by the trial judge, was apparently file-stamped (although no date or time was included), and had an apparent bar code sticker from the clerk of courts. The entry provided that "Defendant shall pay, within ten days of the signing of this agreed entry, a total sum of Two Million Ninety Thousand Dollars to Plaintiffs as follows: One Million Nine Hundred Thousand Dollars to David H. Kennett, Plaintiff and One Hundred Ninety Thousand Dollars to MILA Investments, Plaintiff." In exchange, the plaintiffs agreed to release Hutchins, his company, and CIC from any future liability. The agreed entry stated that it incorporated an "Exhibit A," but no exhibit was attached.

{¶ 8} In his motion, Kennett acknowledged that the agreed entry does not appear on the online dockets of either case, and that none of the attorneys involved has been able to locate a copy of the entry or exhibit. Kennett asserted that Ohio law is silent on a procedure for reviving a filed judgment that does not appear on the records of a court, but general equitable principles should allow the trial court to revive the judgment.

{¶ 9} Hutchins, his company, and CIC opposed Kennett's motion. Hutchins summarized the reasons why the motion should be denied as follows:

The reasons why the Court is not capable of granting the relief requested by David Kennett are exceedingly great but boil down to the following: (1) there is no underlying judgment for the Court to renew; (2) the mysterious $1,900,000 agreed judgment which David Kennett claims to have "recently found" is obviously fake, forged and is being used in the attempt to facilitate a fraud on the Court and the Defendants; (3) the very claims which purportedly gave rise to the mysterious agreed judgment were in fact voluntarily dismissed pursuant to Civ.R. 41(A) over ten years ago in August of 2007; (4) pursuant to the legal effect of the filing of the voluntary dismissal the Court lacks jurisdiction to grant the relief requested by David Kennett; (5) the rendition, validity and enforcement of the purported $1,900,000 agreed judgment is expressly contrary to the General Release (defined below) entered into between David Kennett and the Defendants in December 2008 wherein David Kennett released the Defendants from any and all claims arising from the management agreement which was at issue within this case; (6) David Kennett fairly recently filed a new action attempting to assert various released claims against the Defendants in violation of the General Release within Montgomery County Common Pleas Court 2016-CV-1028. The validity, scope and effect of the General Release has already been determined and found within a final appealable order * * * dated September 23, 2016. Said entry was crystal clear in its use of language expressly notifying notifying [sic] David Kennett that the terms of the General Release completely released any and all claims

related to the Defendants' prior management of property owned by the Breitenstrater Family Trust. * * *

The Hutchins parties claimed that Kennett had engaged in frivolous conduct in violation of R.C. 2323.51(B)(2) and Civ.R. 11, and they sought attorney fees as a sanction.

{¶ 10} CIC also opposed Kennett's motion and adopted Hutchins's opposition memorandum. CIC emphasized that the purported agreed entry was a contradiction within itself, as the listing of both case numbers on the entry would not have occurred until after the cases were consolidated on July 30, 2007, but the time stamp identified the clerk of courts as Dan Foley, who was no longer clerk of courts in July 2007.

{¶ 11} The trial court held a hearing on Kennett's motion to revive the judgment and on Hutchins's motion for sanctions. Kennett testified on his own behalf regarding the motion, and offered the agreed entry (Pl.'s Ex. 1) as an exhibit. Hutchins also testified, and the defendants presented several court documents demonstrating the procedural history of the various related cases (Def.'s Ex. A-K, M-P), as well as a copy of the general mutual release agreement (Def.'s Ex. L). Hutchins also called an attorney, Christopher Epley, to testify regarding the reasonableness of the attorney's fees for purposes of the motion for sanctions, and presented an invoice for $5,360 (Def.'s Ex. Q).

{¶ 12} On October 8, 2018, the trial court overruled Kennett's motion to revive the dormant judgment, reasoning:

Defendant has urged a variety of bases upon which the Court might not enforce Exhibit 1, including the voluntary dismissals of these actions, and the release signed by Kennett which the Court found valid and probative in a 2016 case brought by Plaintiff against Defendant for claims

arising out of the same transactions between the parties as alleged in the instant case(s). The Court finds these legal defenses to be valid and persuasive for dismissal of this matter. However, the Plaintiff asks the Court to act in equity to enforce this entry, again calling it a judgment, by exercise of its equity power.

As such, Plaintiff claims that he would not have signed the Exhibit L release had he been aware of the "judgment" (his word) evidenced by Exhibit 1. Presumably also, Kennett might claim (though he did not) that he would not have voluntarily dismissed the instant matter had he known about Exhibit 1.

Kennett was, however, unable to articulate any plausible theory of who, how or why Exhibit 1 came to be. Although he made a vague allegation of some manner of fraud against him, the Court finds such to be illogical, not reasonable and an unworthy basis upon which to invoke the Court's power to enforce such a document in law or in equity. And, the Court finds crucial that Exhibit 1 is without any basis whatsoever for authentication. No one knows who prepared it, no one recalls having ever signed it, Kennett himself was and is now unable to explain how its terms were agreed, or any reason why they were agreed or kept from he who benefitted most from it -- Kennett himself. Without more, the Court finds no basis upon which to exercise its equity power.

In its ruling, the court also granted the motion for attorney fees, pursuant to R.C. 2323.51, and awarded $5,360.

{¶ 13} Kennett appeals from the trial court's judgment, raising three assignments of error.

## II. Denial of Motion to Revive Dormant Judgment

{¶ 14} Kennett's first assignment of error states: "The trial court erred in finding no basis in law or fact for the court to exercise jurisdiction for consideration of the motion to revive the agreed entry as a dormant judgment." Kennett "submits that the trial court did have power in equity to determine whether or not the Agreed Order was valid."

{¶ 15} Kennett testified that he first became aware of Exhibit 1 in the first part of April 2018 when his wife found the document while going through old files at their house; he did not find any attachment to the document. Kennett stated that he had never seen the agreed entry before and "absolutely ha[d] no idea where it came from or how it got here." Kennett further testified that he had no knowledge of how the judge's or attorneys' signatures came to be on the document.

{¶ 16} Kennett described his efforts to obtain information about the agreed entry. He testified that he tried to contact Robert Lachey of MILA Investments, but Lachey did not know anything about the agreed entry. Kennett tried to contact MILA Investments' attorney, but he did not return Kennett's call. Kennett stated that the attorney for the defendants in those cases was now deceased. Kennett indicated that he spoke with the judge who allegedly signed the entry; the judge stated that he had checked court records but could not find anything on file. Finally, Kennett checked with CIC, which indicated that it had no record of the agreed entry.

{¶ 17} During cross-examination by Hutchins's counsel, Kennett was asked about apparent errors in the agreed entry, such as typographical errors, a discrepancy in how

one attorney usually signed his name, and an apparent error in another attorney's address. Kennett repeatedly denied preparing Exhibit 1.

{¶ 18} Kennett stated that he knew he had signed a release, but he would not have done so had he known that he was owed more than a million dollars. Kennett commented that there had been "considerable fraud involved" in the cases. Kennett stated that he went to an attorney with the agreed entry, in good faith, so that the matter could be clarified. Kennett indicated that his attorney recommended the motion to revive a dormant judgment due to passage of time since the entry was created.

{¶ 19} Paul Hutchins testified that he did not, at any time, negotiate a settlement to pay Kennett $1.9 million. Hutchins stated that the only settlement agreement was Exhibit L, the general mutual release agreement.

{¶ 20} The evidence at the hearing supported the trial court's conclusion that Kennett had not established that the agreed entry (Exhibit 1) was a valid judgment such that the court should exercise its equitable power to revive it. The purported agreed entry was not properly time-stamped (no date or time was included), and it did not appear in any court docket. Kennett presented no witnesses who could authenticate the document and testify to the creation and/or signing of the agreed entry. Hutchins denied that any settlement had been reached with Kennett, other than the general mutual release agreement (Exhibit L), which Kennett acknowledged that he had signed.

{¶ 21} In addition, the evidence at the hearing demonstrated that Kennett dismissed without prejudice his action in Case No. 2007 CV 169 on August 2, 2007. (Def.'s Ex. F.) In addition, the parties to Case Nos. 2005 CV 723 reached a settlement, and that case was dismissed without prejudice on August 29, 2007. (Def.'s Ex. G.)

**{¶ 22}** It is well established that, "following a Civ.R. 41 voluntary dismissal without prejudice, the parties are in the same position they were in before the action was filed." *Nielsen v. Firelands Rural Elec. Coop., Inc.*, 123 Ohio App.3d 104, 109, 703 N.E.2d 807 (6th Dist.1997), citing *Zimmie v. Zimmie*, 11 Ohio St.3d 94, 464 N.E.2d 142 (1984); *State v. Bays*, 2d Dist. Greene No. 2014-CA-24, 2015-Ohio-1935, ¶ 11. "The action is treated as if it never had been commenced, the trial court loses jurisdiction over the dismissed matter, and '[j]urisdiction cannot be reclaimed by the court.' " *Bays* at ¶ 11, quoting *Zimmie* at 95. Accordingly, once Case Nos. 2005 CV 723 and 2007 CV 169 were dismissed without prejudice, the trial court no longer had authority to take further action in those cases.

**{¶ 23}** Kennett's first assignment of error is overruled.

### III. Attorney's Fees as Sanction

**{¶ 24}** In his second and third assignments of error, Kennett claims that the trial court erred in awarding attorney's fees and in finding that the requested amount was reasonable.

**{¶ 25}** Pursuant to R.C. 2323.51(B)(1), "any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal." Frivolous conduct includes conduct of a party that:

> (i) * * * obviously serves merely to harass or maliciously injure another party
> to the civil action or appeal or is for another improper purpose, including,
> but not limited to, causing unnecessary delay or a needless increase in the
> cost of litigation.

\* \* \*

(iii) \* \* \* consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

R.C. 2323.51(A)(2)(a)(i), (iii).

**{¶ 26}** "Whether particular conduct is frivolous may be either a factual or a legal determination. \* \* \* A trial court's factual finding that a party's conduct was [or was not] frivolous will not be disturbed where the record contains competent, credible evidence to support the court's determination. \* \* \* In contrast, whether a pleading is warranted under existing law or can be supported by a good-faith argument for an extension, modification, or reversal of existing law is a question of law, which is reviewed de novo." *Swartz v. Hendrix*, 2d Dist. Darke No. 2010-CA-18, 2011-Ohio-3422, ¶ 22, citing *Foland v. Englewood*, 2d Dist. Montgomery No. 22940, 2010-Ohio-1905, ¶ 32.

**{¶ 27}** Here, the trial court made a factual determination as to whether Kennett's conduct in filing his motion to revive a dormant judgment was frivolous. Thus, we must determine whether the trial court's decision was supported by competent, credible evidence. *See Taylor v. Taylor*, 2d Dist. Miami No. 2014-CA-16, 2015-Ohio-353, ¶ 11.

**{¶ 28}** In granting the motion for attorney's fees, the trial court found:

In considering Defendant's motion for attorney fees, on the basis of Kennett's alleged frivolous conduct under R.C. 2323.51, the Court might well find, in light of the litany of litigation instituted by Plaintiff regarding the same contended issues, especially that in Case No. 16 CV 1028

(Defendant's Exhibits O and P), that such action by Kennett was "to harass or maliciously injure" as proscribed in R.C. 2323.51, such action defined at [(A)](2)(a)(i) of such act. The Court however, declines to do so, finding a more direct violation of this section at [(A)](2)(a)(iii) of the section, being conduct urging a contention that has "no evidentiary support." Kennett is a trained, though retired, lawyer with intimate knowledge of the history of the instant matter (and having represented Plaintiff and himself in subsequent related matters). As such, he must have known that he was unable to authenticate the Exhibit 1 document; that its content, and how it related to any agreement reached would not be explainable; and that how the document came to be would not be explainable. Kennett's motion was, accordingly, based upon nothing more than a "hope and a prayer" which is proscribed by Ohio law, as noted above.

The Court further finds that the testimony of Attorney Epley was credible and expert and that the fees claimed by Defendant were necessary and reasonable.

Accordingly, attorney's fees are awarded in favor of Defendant and against Kennett in the amount of $5,360.00.

{¶ 29} We find no fault with the trial court's ruling. Kennett sought to "revive" a purported agreed entry that was facially suspect, that did not appear on the dockets of the cases listed in its caption, and that purported to relate to actions that had been voluntarily dismissed. Kennett could not explain how he came to possess the document, and he claimed to have no knowledge about the creation of the document. Despite his

lack of knowledge, Kennett called no witnesses to elicit testimony regarding the circumstances surrounding the creation and signing of the purported agreed entry. And, Kennett had signed a release relating to the same matters. The record thus supports the trial court's conclusion that Kennett's motion was based on factual contentions that had no evidentiary support, contrary to R.C. 2323.51(A)(2)(a)(iii).

{¶ 30} The party seeking sanctions under R.C. 2323.51 bears the burden of establishing the costs incurred in connection with the frivolous conduct and reasonable attorney fees that it incurred. A party who may be awarded reasonable attorney fees may submit an itemized list of the legal services rendered, the time expended in rendering the services, and the fees associated with those services. R.C. 2323.51(B)(5)(a); *Foland*, 2d Dist. Montgomery No. 22940, 2010-Ohio-1905, at ¶ 66.

{¶ 31} At the hearing, Hutchins presented an itemized invoice of legal services from June 10, 2018 to October 4, 2018 related to Kennett's motion to revive a dormant judgment. The invoice reflected total services of 26.80 hours at a rate of $200 per hour, for a total cost of $5,360. Attorney Christopher Epley testified that he has been a licensed attorney since 1999, that he has practiced civil litigation during his entire practice, that he had reviewed the invoice, and that he "felt they [the charges] were reasonable for the amount of time spent on the case, the novelty of the case, the review of the description of services rendered, [and] all the exhibits that had to be reviewed and found." Epley further testified that he found "the amount of time at the hourly rate for [counsel's] years as an attorney [was] reasonable for the area." No additional witnesses testified regarding attorney's fees. Based on the evidence, the trial court did not abuse its discretion in concluding that the amount of attorney fees requested was reasonable.

{¶ 32} Kennett's second and third assignments of error are overruled.

### IV. Conclusion

{¶ 33} The trial court's judgment will be affirmed.

. . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Jerry A. Meadows
Brian R. McHenry
Brandon C. Hedrick
Charles Ewing
Bradley Smith
Hon. Gregory F. Singer